Filed 10/31/14  In re Jeremiah C. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re JEREMIAH C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEREMIAH C.,<br><br>    Defendant and Appellant. | A140219<br><br>(Contra Costa County<br>Super. Ct. No. J13-00991) |

Jeremiah C. (Jeremiah), a minor, appeals after the juvenile court sustained an allegation that he made a criminal threat (Pen. Code,[1] § 422).  He contends there was no substantial evidence supporting the finding.  We affirm the judgment.

## I. BACKGROUND

The Contra Costa County District Attorney filed a petition under Welfare and Institutions Code section 602 alleging Jeremiah made a criminal threat toward his mother and committed battery upon her.  After a contested jurisdiction hearing, the juvenile court sustained both allegations and reduced the criminal threat to a misdemeanor (§ 422).  Following the disposition hearing, the juvenile court adjudged Jeremiah a ward of the

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

court and placed him on probation under the custody of his parents. On appeal, the issue is whether there was sufficient evidence to sustain the allegation of a misdemeanor criminal threat.

In late August 2013, Jeremiah lived at home with his mother (M.L.), his stepfather, his brother, and his sister. On August 20, 2013, Jeremiah had a loud argument with M.L. and his stepfather, and M.L. called 911. When Officer Wilkerson arrived at the scene, M.L. was very agitated and told the officer that she was extremely frustrated because Jeremiah had not been listening to her and had been disrespectful towards her. M.L. complained to the officer that Jeremiah had been a "disruption" to the household since returning home from living with other relatives and she did not want him in the house any longer. No arrest was made on that day.

The next day, August 21, 2013, Jeremiah took BART home from school and arrived at the BART station, three miles from his home, around 4:00 p.m. Jeremiah called his house and spoke to his brother to see if M.L. could pick him up from the BART station. His brother was in the bathroom and told Jeremiah that he could not give M.L. the message. Jeremiah was angry because he had to walk home.

When Jeremiah arrived home, his brother was watching television in the living room. His sister was also in the living room. Jeremiah immediately walked up to his brother and started yelling and cursing. His brother stood up and M.L. got between the brothers. Jeremiah, who is six feet three inches tall and weighs 180 pounds, "tried to swing" at his brother and according to M.L. hit her instead. Jeremiah continued screaming and said that he "hated" them.

Jeremiah's stepfather came into the living room during the altercation and tried to get the brother and sister out of the room. He and M.L. were "trying to make sure [the sister] was out of harm's way." M.L. grabbed the back of Jeremiah's shirt and got him out of the house.

Once outside, Jeremiah said to M.L., "I'm going to shoot up the place. I don't care if anyone here gets murdered." M.L. called the police.

2

When Officer Stage arrived on the scene, M.L. and Jeremiah were still outside the house and M.L. was "screaming" that she wanted Jeremiah arrested. Jeremiah was "screaming profanities" at M.L. and "swinging his arms around."

M.L. told the officer that Jeremiah said, "I'm going to shoot up the place. I don't care if anyone here gets murdered." In addition, she reported that Jeremiah had hit her in the chest. M.L. told Officer Stage that she was scared. When the officer asked M.L. if Jeremiah was capable of following through on his threat, she said, "Yes."

The brother told Officer Stage that Jeremiah had hit M.L. and that Jeremiah had said something about a gun. Jeremiah said to the officer, "Man, I fucked up."

At the jurisdictional hearing, M.L. admitted that during the physical altercation in the living room she was scared of Jeremiah. However, she denied telling Officer Stage that she was scared when Jeremiah threatened to "shoot up the place." She also denied telling the officer that she believed Jeremiah "might make good on his threat." M.L. further testified that she loves her son and hated to see him in custody. Jeremiah testified that he did not yell any threats to his family.

## II. DISCUSSION

### A.    Standard of Review

Jeremiah contends there was insufficient evidence to sustain the allegation of a criminal threat. "To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) In the event the findings are reasonably justified, whether a contrary finding is also possible does not warrant a reversal of the judgment. (*People v. Valencia* (2008) 43 Cal.4th 268, 289–290.) This standard applies to juvenile criminal cases. (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 605.)

**B.      Sufficiency of the Evidence**

Jeremiah claims the People failed to establish sufficient evidence for all five of the required elements to sustain allegations of a criminal threat under section 422.[2] *People v. Toledo* (2001) 26 Cal.4th 221, 227–228, sets forth five elements the prosecution must prove to establish a violation of section 422:  "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances.  [Citation.]"  Jeremiah argues substantial evidence was not presented to establish that he made an unequivocal and immediate threat to inflict an unlawful injury upon M.L.  He further argues that the record fails to disclose sufficient evidence demonstrating that such a threat caused M.L. to be in sustained fear for her safety.

**1.  *Jeremiah Made an Unequivocal and Immediate Threat***

Jeremiah argues that the evidence was insufficient to show that his words were "so unequivocal, unconditional, immediate and specific" as to constitute a criminal threat.

---

[2] Section 422, subdivision (a) states in relevant part:  "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety . . . ."

4

" 'A threat is sufficiently specific where it threatens death or great bodily injury. A threat is not insufficient simply because it does "not communicate a time or precise manner of execution, *section 422* does not require those details to be expressed." [Citation.]' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 806, italics added.) In determining whether a particular threat is a criminal threat, we consider all of the circumstances surrounding the threat including the words used, the manner in which the communication is made, the prior relationship of the parties, and the actions of the accused after communicating the threat. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860.)

Here, Jeremiah's threat was not an isolated incident, but part of an ongoing and escalating conflict. The night before the threat, Jeremiah engaged in a shouting match with his parents. Jeremiah's behavior was so disruptive that M.L. felt the need to call the police for assistance. When the police arrived, M.L. told them that she no longer wanted Jeremiah in the house. The following evening, Jeremiah was very angry and began screaming and cursing at his brother as soon as he arrived home. M.L. intervened and the confrontation escalated into physical violence. After M.L. finally removed Jeremiah from the house, Jeremiah yelled, "I'm going to shoot up the place. I don't care if anyone here gets murdered." Jeremiah's threat, considered in the context of his increasingly aggressive behavior, can reasonably be interpreted as an unambiguous threat to inflict serious bodily injury on his family. (See *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1221 [that defendant was "extremely angry," "cursing," and was in "very close proximity" to the victim when he made the threat could show that his threat was serious].)

Jeremiah relies on *In re Ricky T.* for the proposition that his threat was a "mere teenage ranting, rather than a 'serious, deliberate statement[] of purpose.' " (*In re Ricky T.* (2001) 87 Cal.App.4th 1132 (*Ricky T.*).) In *Ricky T.,* a high school student told his teacher he was "going to get [him]" and would "kick [his] ass" because the teacher had accidentally hit him with a door. (*Id.* at pp. 1136–1137, 1141.) There was no evidence of prior offensive remarks between the juvenile and the teacher and no physical violence accompanied the statement. We held that under the circumstances, the juvenile

5

did not make an unequivocal and immediate statement to constitute a "true threat within the meaning of section 422." (*Id.* at p. 1139.)

However, several factors missing in *Ricky T.* are present in this case. In sharp contrast to the ambiguous statements uttered by the juvenile in *Ricky T.*, Jeremiah's statement, "I'm going to shoot up the place. I don't care if anyone here gets murdered," constitutes an unambiguous, unconditional threat to hurt his family. Moreover, Jeremiah's prior aggressive behavior and the physical violence that accompanied the threat provides further context in which to evaluate the gravity of his statement. Under these circumstances, Jeremiah's words were more than just angry teenage rants. (See *People v. Franz* (2001) 88 Cal.App.4th 1426, 1449 [surrounding circumstances, showing that defendant was "in a rage," and had previously punched the victim, supported a criminal threat conviction].) A reasonable fact finder could conclude that Jeremiah's threat was "so unequivocal, unconditional, immediate, and specific" as to support a criminal threat conviction. (§ 422.)

### 2. *Sustained Fear*

Jeremiah also claims that no substantial evidence exists to show that M.L. was in sustained fear after he uttered the threat. "The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) "The statute . . . does not concentrate on the precise words of the threat. Instead, the statute focuses on the effect of the threat on the victim, to wit, communication of a gravity of purpose and immediate prospect of execution of the threat." (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1158.)

Officer Stage testified that on the day of the incident M.L. told him that she was afraid, and that she believed Jeremiah was capable of carrying out his threat. Moreover, M.L. testified that during the altercation she was scared and trying to get her daughter, who was in the living room, "out of harm's way." Jeremiah's history of aggressive behavior and the fact that M.L. felt the need to call the police for assistance the day before the incident, as well as during the incident, indicate that M.L. felt threatened by

6

Jeremiah's statement and was afraid of him. In addition, M.L.'s concern for her daughter's well-being is evidence that M.L. believed Jeremiah could cause harm to other members of the family.

M.L.'s actions and statements during the altercation belie her testimony at the jurisdictional hearing that she did not believe any of Jeremiah's threats. The juvenile court stated, "I credit very little of [M.L.'s] trial testimony. I do rely almost completely on the statements made by Officer Stage. I find those statements to be reliable." On appeal we may not substitute our determination as to the credibility of a witness. (See *People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1426.) Considering the surrounding circumstances, the juvenile court's determination that Officer Stage's testimony was more credible and reliable than M.L.'s testimony is reasonable.

Viewing the evidence in the light most favorable to the judgment, sufficient evidence supported the juvenile court's finding that Jeremiah made a criminal threat.

### III. DISPOSITION

The judgment is affirmed.

_____
Bolanos, J.*

We concur:

_____
Ruvolo, P.J.

_____
Reardon, J.

* Judge of the San Francisco City and County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.