Filed 5/18/16  P. v. Chagollan CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RONALD CHAGOLLAN,<br><br>        Defendant and Appellant. | B265571<br><br>(Los Angeles County Super. Ct.<br> No. BA431518) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ronald S. Coen, Judge.  Affirmed.

Jennifer Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \*

Defendant Ronald Chagollan was charged with one count of making a criminal threat (Pen. Code, § 422), and with hate crime and prior offense allegations (§§ 422.75, 667.5 & 1203.4). The jury found defendant guilty as charged, and he was sentenced to six years in prison. On appeal, defendant challenges the sufficiency of the evidence for his criminal threat conviction, arguing that the threat he was going to "rip the black off" his victim's face was ambiguous, and that the evidence was insufficient to establish the victim was in sustained fear for her safety. We affirm the judgment.

## FACTS

On November 8, 2014, Dominique J. moved into Laura C.'s Atwater Village apartment. Early in the morning on November 9, Dominique J. had the front door of the apartment propped open with the screen door locked. She noticed defendant, who was "very tall," standing at the screen door looking in. She repeatedly asked defendant, "May I help you," but defendant just stood there, unresponsive with a "blank stare." He seemed "angry, [and] kind of surprised." He left after five minutes, walking across the street and entering a residence.

Later that night, Dominique J. heard defendant yelling in the street, "F--- this shit. This f---ing shit. F--- this. I hate it. F--- this shit." When Dominique J. asked Laura C. about defendant, Laura C. told her that defendant was their neighbor and that "he yells from time to time."

Around 11:00 p.m. on November 13, 2014, Dominique J. was sleeping in her living room when she was disturbed by a loud banging on the front door, only a few feet away from where she lay. She then heard pounding on the window. Dominique J. was disoriented at first. She then heard defendant yelling "You fucking n-----. Get out. I'm going to rip the f---ing black off your face. You f---ing black ass bitch, get out." Defendant carried on, repeating himself "very loudly," and continued banging on the apartment's door and windows. Dominique J. told defendant to "leave [her] alone," but the banging and cursing continued for approximately 15 minutes. Dominique J. was scared, and believed her life was in danger. She believed that defendant was capable of carrying out his threats. She was "nervous" and "shaking."

2

Laura C. was in the shower when she heard unusual banging noises.  After she got out of the shower, she heard defendant screaming "You black bitch" and "I'm going to beat the black out of you."  Dominique J. was "crying" and "shaking" throughout the entire 15 minutes defendant was "circling [the] apartment screaming, banging the . . . windows."

Dominique J. called police approximately five minutes into defendant's tirade.  She was scared, felt she needed protection, and thought that defendant might throw a brick through her window.  Police did not immediately respond, so Dominique J. called a second time.  Police eventually arrived after 30 minutes.

By the time police arrived, defendant had returned to his home across the street.  Los Angeles Police Officer Edgar Mejia and his partner tried to make contact with defendant to arrest him, but defendant was behind a locked gate at his home, and refused to come out.  Dominique J. was outside of her apartment, approximately 40 feet away, when the officers approached defendant.  Defendant continued to yell "racial obscenities" at Dominique J., "threatening to rip her black skin off and to beat the black skin off of her."  Dominique J. heard defendant tell police "I didn't do anything wrong. . . .  She's the only black person in this neighborhood.  Can't you see her black spirit?  It calls me in the middle of the night.  That f---ing bitch black ass.  I'm going to rip that black off her skin."

Officer Mejia told defendant that if he came outside, and apologized to Dominique J., he would not take defendant to jail.  Defendant calmed down and came outside, and was arrested.

## DISCUSSION

Defendant contends there was insufficient evidence his threat to "rip the black off" Dominique J.'s face was unequivocal, unconditional, immediate and specific, or that Dominique J. was in "sustained fear," reasoning any fear that Dominique J. experienced was "fleeting or transitory."  Defendant is merely asking this court to reweigh the evidence, which we cannot do.

3

" 'In reviewing the sufficiency of evidence . . . the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' . . . 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must . . . presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' . . . The same standard also applies in cases in which the prosecution relies primarily on circumstantial evidence. . . ." (*People v. Young* (2005) 34 Cal.4th 1149, 1175, citations omitted.) The reviewing court does not reweigh the evidence, evaluate the credibility of witnesses, or decide factual conflicts. (*People v. Culver* (1973) 10 Cal.3d 542, 548.)

"In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

Defendant contends the threat to "rip the black off" Dominique J.'s face is not a criminal threat as a matter of law, because "[r]ipping the black off someone's face is obviously not possible."

To determine whether a threat is unequivocal, unconditional, immediate, and specific, we do not focus "on the precise words of the threat," but rather "on the effect of the threat on the victim, to wit, communication of a gravity of purpose and immediate prospect of execution of the threat." (*People v. Stanfield* (1995) 32 Cal.App.4th 1152,

4

1158.)  "[T]hreats [are] not subject to protection on the basis that they were couched in ambiguous terms."  (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1221.)  "A communication that is ambiguous on its face may nonetheless be found to be a criminal threat if the surrounding circumstances clarify the communication's meaning.  [Citation.]"  (*In re George T.* (2004) 33 Cal.4th 620, 635.)  "The circumstances surrounding a communication include such things as the prior relationship of the parties and the manner in which the communication was made.  [Citation.]"  (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860.)

The jury reasonably found defendant threatened to seriously harm Dominique J.  Days before the incident, defendant stared ominously at Dominique J. through the screen door to her home.  He was later heard screaming hysterically in the street.  On the night of the incident, defendant banged violently on the apartment's door and windows for 15 minutes, screaming about "ripping" and beating the black off Dominique J.  Even the police were unable to quell defendant's outburst.  There was nothing "ambiguous" about defendant's threat to harm Dominique J.

We also disagree with defendant's characterization of Dominique J.'s fear as "fleeting or transitory."  To establish the "sustained fear" element, "the statute . . . requires proof of a mental element in the victim."  (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)  "Sustained fear" is fear that is more than "momentary, fleeting, or transitory."  (*Ibid.*)  No specific minimum time is required to meet the "sustained fear" element.  (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 ["When one believes he is about to die, a minute is longer than 'momentary, fleeting, or transitory.'  [Citation.]"]; *Allen*, at p. 1156 ["[f]ifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than sufficient to constitute 'sustained' fear for purposes of this element of section 422"].)

Dominique J. testified that she was scared, believed her life was in danger, and believed defendant was capable of carrying out his threats.  Laura C. testified that Dominique was "crying" and "shaking" throughout the entire 15 minutes defendant was

5

"circling [the] apartment screaming, banging the . . . windows." Clearly, her fear was not merely fleeting.

## DISPOSITION

The judgment is affirmed.


GRIMES, J.

WE CONCUR:


RUBIN, Acting P. J.


FLIER, J.