Filed 2/4/21  P. v. Taylor CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073946 |
| v. | (Super. Ct. No. FVI19001744) |
| EDWIN TAYLOR, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

A jury convicted defendant and appellant, Edwin Vincent Taylor II, of one count of making criminal threats (Pen. Code, § 422, subd. (a)).[1] The trial court imposed a suspended sentence of one year in county jail and placed defendant on formal probation for a period of three years.

On appeal, defendant contends: (1) substantial evidence does not support his conviction; (2) the trial court prejudicially erred by failing to sua sponte instruct the jury on the lesser included offense of attempted criminal threats; (3) the trial court prejudicially erred by admitting testimony from the victim's mother; and (4) cumulative error requires reversal of his conviction. We reject defendant's contentions and affirm the judgment.

## II.

## FACTS

The victim, defendant's then-12-year-old daughter, L.T., was folding laundry at her grandparents' house, where defendant lived, when defendant asked her to go to his room with him. L.T.'s grandmother, defendant's mother, was looking for L.T. when she tried to enter defendant's room. Defendant slammed the door shut and locked it to prevent L.T.'s grandmother from entering.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

Defendant started telling L.T. about "partying" when he was younger. He was talking to L.T. in a low, angry voice. According to L.T., he told her that the police broke his hand when arresting him, and that "he would break [L.T.'s] arm too if he wanted to." But, according to an investigating officer, L.T. stated that defendant asked her, "'Please, do you want me to break your hand?'" L.T. testified that she did not recall telling that to the officer and that defendant told her he would break her arm if he wanted to do so.

Defendant became angry because his mother kept trying to enter the room. L.T. was scared. She testified that defendant told her that he wanted custody of her and that "he would kill [her] and him[self] so nobody in the world could have [her]." However, L.T. also testified that she told an investigating officer that defendant said, "'If someone tries to get you, I'll kill you and me so nobody will have you.'" Defendant also told L.T. that he wanted to get a restraining order against her mother, D.M., "so it [would] just be [him and her]," and that he would "shoot [her mother] in the head with a gun."[2]

While defendant was talking to her, L.T. was scared to use her cellphone to call 911 because she was unsure how he would react. L.T. took defendant's statements seriously because he "always talk[ed] about harming people" and she had seen him act violently toward D.M. L.T. thought her life and her mother's life were in danger. L.T. believed that defendant would kill her and himself if given the opportunity. She was scared and wanted to go back to her mother's home.

---

[2] Defendant mistakenly argues L.T. testified that defendant told her he would have someone shoot D.M. in the head. L.T. testified that defendant "said he'll shoot [D.M.] in the head with a gun."

3

L.T. went to D.M.'s house the next day and told her what defendant had said. Defendant called D.M. later that day and said that he did not want L.T. around his parents. He told D.M. that something bad would happen and she would regret it if L.T. went back to her grandparents' house. Because D.M. was scared, she called the police. When D.M. and L.T. met with law enforcement, they were both scared.

III.

DISCUSSION

A. *Substantial Evidence Supports Defendant's Conviction*

Defendant contends insufficient evidence supports his conviction for making criminal threats because none of his statements constituted a criminal threat. We disagree.

1. *Standard of Review*

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither

4

reweighs evidence nor reevaluates a witness's credibility." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

"'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) We may reverse a conviction for a lack of substantial evidence only if it appears ""that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction.""" (*People v. Cravens* (2012) 53 Cal.4th 500, 508.)

2. *Analysis*

To convict defendant of making a criminal threat, the People had to prove: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate

5

prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

The People argued defendant made three statements to L.T. that were criminal threats: (1) telling her that he would break her arm if he wanted to or asking her if she wanted him to break her hand; (2) telling her, "[i]f someone tries to get you, I'll kill you and me so nobody will have you"; and (3) telling her that he would shoot D.M. in the head with a gun. Defendant contends that each statement failed to satisfy one of the five elements necessary to constitute a criminal threat. We disagree.

Defendant asserts that the first statement was not intended as a threat. As noted, the evidence about what defendant actually said was disputed. L.T. testified that defendant told her that he would break her arm if he wanted to, whereas defendant relies on L.T.'s statement to law enforcement that defendant asked her if she wanted him to break her hand. We assume for the sake of defendant's argument that defendant is correct that he asked J.T. if she wanted him to break her hand, and did not tell her that he would break her arm if he wanted to.

Defendant asserts his asking L.T. if she wanted him to break her hand was not a criminal threat because (1) the question was not intended to threaten her, but so that she would know how it felt when the police broke his hand and (2) the question lacked

6

immediacy because it was not "accompanied by any show of menace or physical violence." We conclude the jury reasonably found otherwise.

The word "immediate" in section 442 means "that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out." (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538 (*Melhado*).) For the defendant's words to qualify as a threat, "immediacy . . . [is] not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim." (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157.) To assess the immediacy of the defendant's alleged threat, the jury may consider the parties' history and "the defendant's mannerisms, affect, and actions involved in making the threat as well as subsequent actions taken by him." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1013.) The determination of whether the defendant's word conveyed a threat that was sufficiently immediate therefore "can be based on all the surrounding circumstances and not just on the words alone." (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.)

On this record, the jury reasonably could find that defendant intended to threaten L.T. by asking her if she wanted him to break her hand. A rational jury also could have found that defendant's statement was sufficiently immediate. L.T. was 12 years old at the time and she had seen defendant act violently toward her mother and heard him repeatedly talk about harming people. Defendant made the statement to her in a low, angry voice while she was alone with defendant in his room with the door locked so that

7

her grandmother could not enter. In the same brief conversation, defendant told L.T. that he would kill her if someone else got custody of her, and that he would shoot her mother in the head with a gun. L.T. was afraid to use her cellphone to call 911 because she did not know how defendant would respond. She was also scared because she thought her life and her mother's life were in danger. The next day, while still afraid because of what defendant said to her, L.T. told her mother what he had said.

Under these circumstances, a rational jury could reasonably find that defendant intended his statement, "do you want me to break your hand?," to convey a threat of future physical harm to L.T. that was sufficiently immediate. (See *Melhado*, *supra*, 60 Cal.App.4th at p. 1538 [immediacy focuses on the victim's understanding of the "seriousness and imminence" of "the *future prospect* of the threat being carried out"].)

The jury could reasonably find that defendant's telling L.T. that he would kill her and himself if someone "tried to get her" so "no one could have her" were threats. Defendant argues the statement was "not sufficiently unconditional" and lacked immediacy. For the same reasons defendant's question about breaking L.T.'s arm was sufficiently immediate, his telling L.T. that he would kill her if "someone tried to get her" was sufficiently immediate given that L.T. testified that she feared "the *future prospect* of the threat being carried out, should the conditions not be met." (*Melhado*, *supra*, 60 Cal.App.4th at p. 1538.)

Defendant's statement was likewise sufficiently unconditional. As several cases have held, a threat need not be absolutely unconditional to satisfy section 422's

8

requirement that a threat be "so . . . unconditional."  (See e.g., *People v. Brooks* (1994) 26 Cal.App.4th 142, 144 ["If you go to court and testify, I'll kill you" held a threat under section 422]; *People v. Stanfield*, *supra*, 32 Cal.App.4th 1152 [defendant's statements threatening to kill the victim if he did not help her bring a political party into power were threats under section 422]; *People v. Dias* (1997) 52 Cal.App.4th 46 [defendant's statements to his ex-wife that he would kill her if she did not stop seeing her boyfriend or if she was lying to him and threatening her boyfriend that he would be killed if he called the police were threats under section 422]; *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1218 [statements "'I'm going to get you,' 'I'll get back to you'" and "'I'll get you'" were threats under section 422].)  The fact that defendant told L.T. that he would kill her only "if someone tried to get her" did not render the statement impermissibly conditional under section 422.  The jury could reasonably find that the statement sufficiently "convey[ed] gravity of purpose and immediate prospect of execution to [L.T.]," thus satisfying section 422's "unconditional" requirement.  (*Melhado*, *supra*, 60 Cal.App.4th at p. 1538.)

As for defendant's statement to L.T. that he would shoot D.M., her mother, in the head, defendant argues it was nothing more than an "emotional outburst" not intended to be a threat.  Given that L.T. testified she feared for D.M.'s life as a result of the statement, in part because she had seen defendant act violently toward D.M. in the past and he "always talks" about hurting people, the jury could have reasonably found that defendant "willfully threaten[ed] to commit a crime which will result in death or great

9

bodily injury to [D.M.]." (§ 422, subd. (a).) (See *People v. Mendoza*, *supra*, 59 Cal.App.4th at p. 1340.)

In sum, substantial evidence supports defendant's conviction for making a criminal threat (§ 422).

B. *The Trial Court Did Not Have to Instruct the Jury on Attempted Criminal Threats*

Defendant contends the trial court erred by failing to sua sponte instruct the jury on the lesser included offense of attempted criminal threats. We disagree.

An uncharged offense is included in a greater charged offense if the greater offense, as defined by statute, cannot be committed without also committing the lesser (the elements test), or the language of the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test). (*People v. Parson* (2008) 44 Cal.4th 332, 349.) "[E]ven absent a request, a trial court must instruct on the general principles of law relevant to the issues the evidence raises. [Citation.] '"That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.]"' [Citation.] '[T]he existence of "*any* evidence, no matter how weak" will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is "substantial enough to merit consideration" by the jury. [Citations.]' [Citation.]"

10

(*People v. Taylor* (2010) 48 Cal.4th 574, 623.) "'"Substantial evidence" in this context is "'evidence from which a jury composed of reasonable [persons] could . . . conclude[]'" that the lesser offense, but not the greater, was committed.'" (*People v. Moye* (2009) 47 Cal.4th 537, 553.) We review the failure to give a lesser included offense instruction under the de novo standard of review. (*People v. Cooksey* (2002) 95 Cal.App.4th 1407, 1411.)

"A variety of potential circumstances fall within the reach of the offense of attempted criminal threat. For example, if a defendant takes all steps necessary to perpetrate the completed crime of criminal threat by means of a written threat, but the crime is not completed only because the written threat is intercepted before delivery to the threatened person, the defendant properly may be found guilty of attempted criminal threat. Similarly, if a defendant, with the requisite intent, orally makes a sufficient threat directly to the threatened person, but for some reason the threatened person does not understand the threat, an attempted criminal threat also would occur. Further, if a defendant, again acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat. In each of these situations, only a fortuity, not intended by the defendant,

has prevented the defendant from perpetrating the completed offense of criminal threat itself." (*People v. Toledo*, *supra*, 26 Cal.4th at p. 231.)

Here, it is undisputed L.T. heard defendant's statements and that they scared her. Thus, there was no substantial evidence that defendant committed only an attempted criminal threat. (See *People v. Toledo*, *supra*, 26 Cal.4th at p. 231.) The jury could not have reasonably found that defendant committed the lesser offense of attempting a criminal threat while finding him not guilty of the offense of making a criminal threat. The trial court therefore was not required to instruct the jury on attempted criminal threats.

C. *The Trial Court Properly Admitted D.M.'s Testimony*

Defendant called D.M. the day after he threatened L.T. Over defendant's objection, the trial court allowed D.M. to testify about what defendant said during the phone call. D.M. testified that defendant was "cussing" and said he did not want L.T. around her grandparents (defendant's parents). D.M. explained that defendant told her that if L.T. went back to her grandparents' house, D.M. "wouldn't like it," "would regret it," and would not "like what's going to happen." Defendant, however, did not explain what would happen if L.T. went to her grandparents' house.

Defendant argues the trial court erroneously admitted D.M.'s testimony. We disagree.

"Under Evidence Code section 352, the probative value of the proffered evidence must not be substantially outweighed by the probability that its admission would create

substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.)  Because the decision to admit or exclude evidence under Evidence Code section 352 is committed to the trial court's discretion, we will not disturb a trial court's exercise of that discretion """"except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.""" (*Uspenskaya v. Meline* (2015) 241 Cal.App.4th 996, 1000-1001.)

The People argue defendant's statements to D.M. during the phone call were relevant to show that he intended his comments to L.T. the day before to be threatening and that L.T. was in sustained, reasonable fear.  Defendant, on the other hand, argues D.M.'s testimony was irrelevant because it was "unrelated" to what he said to L.T. the day before.  We disagree.

As we noted, to determine whether a defendant's statements were criminal threats, the jury may consider "all the surrounding circumstances and not just . . . the words alone." (*People v. Mendoza*, *supra*, 59 Cal.App.4th at p. 1340.)  The jury therefore "can properly consider a later action taken by a defendant in evaluating whether" the defendant made a criminal threat.  (*People v. Solis*, *supra*, 90 Cal.App.4th at p. 1014.)

L.T. testified that she was afraid not only for her own safety, but also for D.M.'s safety, because defendant said he was going to shoot D.M. in the head with a gun.  D.M. testified that she called the police after defendant's phone call because she was scared.  Her testimony was therefore relevant to evaluating whether L.T. reasonably feared for her

mother's safety.  (See § 422 [criminal threat requires victim "to be in sustained fear for his or her own safety or for his or her immediate family's safety"].)  It was also relevant to evaluate whether defendant intended to threaten D.M.'s safety when he told L.T. that he was going to shoot D.M. in the head with a gun.  (See *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1221 ["Defendant's activities after the threat give meaning to the words and imply that he meant serious business when he made the threat."].)

Defendant argues D.M.'s testimony about what defendant said when he called her was unduly prejudicial because, even if it was relevant, it was inadmissible character evidence.  (See Evid. Code, § 1101, subd. (a).)  In his view, that testimony was offered only for the impermissible reason of showing that defendant threatened L.T. because he threatened D.M. the next day on the phone.  We disagree.

"[C]haracter evidence is used to show the person acted 'in conformity with' his or her character."  (*People v. Myers* (2007) 148 Cal.App.4th 546, 552.)  That is not why the People offered D.M.'s testimony.  The prosecutor argued her testimony was relevant in part because it served to prove "circumstantially that [defendant was] continuing the threat."  Put another way, the prosecutor argued that defendant's phone call was circumstantial evidence that he intended to threaten, and did threaten, to harm D.M. when talking to L.T. the day before.  The trial court properly admitted it for this purpose.  (See *People v. Martinez*, *supra*, 53 Cal.App.4th at p. 1221.)

Even if the trial court erroneously admitted D.M.'s testimony about defendant's phone call, we conclude the error, if any, was harmless.  "[R]eversal is required only if it

14

is reasonably probable the defendant would have obtained a more favorable result had the evidence been excluded." (*People v. Carrillo* (2004) 119 Cal.App.4th 94, 103.) Even if the trial court had excluded D.M.'s challenged testimony, it is not reasonably probable that defendant would have received a more favorable outcome. Whether defendant was guilty turned largely on L.T.'s testimony about defendant's threats (which the jury necessarily believed), not on what defendant told D.M. a day later. Given that the jury heard L.T.'s testimony that defendant told her he would break her hand, kill her if anyone else "got her," and shoot her mother in the head, it is unlikely that D.M.'s brief testimony about defendant's ambiguous statements unduly influenced the jury. We therefore conclude any error in admitting D.M.'s testimony was harmless because it is not reasonably probable defendant would have obtained a more favorable result had her testimony been excluded. (*Ibid.*)

D. *There Was No Cumulative Error*

Defendant asserts that even if the alleged errors discussed above do not individually warrant reversal, their cumulative effect does. We disagree.

"'[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.'" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) "A predicate to a claim of cumulative error is a finding of error." (*People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1068.) Because we do not find any error, we also do not find any cumulative error that warrants reversal. (*Ibid.*; see also *People v. Duff* (2014) 58 Cal.4th 527, 562 ["In the absence of

15

error, there is nothing to cumulate."].)

## IV.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
J.

We concur:

<u>McKINSTER</u>
Acting P. J.

<u>MENETREZ</u>
J.