Filed 2/23/26  P. v. Parmach CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D087172 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF2302922) |
| ALMARA PARMACH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Jason M. Armand, Judge.  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Collette C. Cavalier, and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

Almara Parmach appeals the judgment sentencing him to prison for two years for making a criminal threat. He contends the evidence introduced at trial was insufficient to support the jury's guilty verdict and the trial court abused its discretion by refusing to classify the conviction as a misdemeanor and by denying probation. We disagree with those contentions and affirm.

## I.

## BACKGROUND

### A.  *Parmach and His Family*

Parmach married F.P. in 2012 and moved with their four children from Afghanistan to the United States in 2021. While they were living in Anaheim, Parmach and F.P. had two more children (twins) in 2022. One of Parmach's cousins found a house for the family in Corona, and they moved there in 2023.

### B.  *Reports of Domestic Violence*

Soon after the Parmachs moved to Corona, S.R., a volunteer who helps immigrants from Afghanistan adjust to life in the United States, contacted them to help. Several months later, F.P. called S.R. and asked for help with learning how to drive. On June 21, 2023, the two went to a parking lot where F.P. could practice. While F.P. was driving, S.R. noticed on F.P.'s forearm two bleeding cuts, each about three inches long, and asked about them. F.P. began to cry and said Parmach cut her with a broken plate. When S.R. asked F.P. whether she wanted to go to a doctor, F.P said she was "scared" to do so because Parmach said "he would hurt her" if she did. F.P. lifted her shirt to show S.R. a scar from a knife wound Parmach had inflicted when they lived in Afghanistan. F.P. also showed S.R. photographs of a knife wound he inflicted on her hand and a bite wound he inflicted on their three-year-old son's face. S.R. told F.P. that she could contact the police, and F.P. said she

2

was willing to do so. F.P. "was very scared to call the police" and wanted "to give [Parmach] another chance" before doing so.

On June 30, 2023, when Parmach was out of town, F.P. summoned the police to her house to report the domestic violence. After Officer Isaiah Franco arrived, S.R. joined by speakerphone so that she could translate for F.P., who did not speak English. F.P. described to Franco four separate incidents of domestic violence and showed him photographs of corresponding injuries. When Franco asked F.P. whether any weapons had been used to hurt her, she showed him a kitchen knife. F.P. "was scared" when she talked to Franco. S.R. heard F.P. report that Parmach "had told her I'll kill you" and "she believed that he would, indeed, kill her." S.R. heard F.P. report that when Parmach "hits their children and she tries to protect them, he would hurt her." S.R. heard F.P. report that "if she ever called the police [Parmach] would kill them."

On July 1, 2023, Sergeant Joseph Brown met F.P. and her children and arranged forensic interviews for some of the children. Barbara Castro interviewed Parmach's daughters, A.P. and H.P.

A.P. was eight years old at the time of the interview. A.P. reported that Parmach bit her brother R.P. on the face and threw her twin sisters on a bed and hit them in the head when they were crying. A.P. said that Parmach "hit" F.P.'s hand with a knife when he was angry. When Castro asked A.P. whether she was "worried" about something, A.P. responded, "Yes," and said Parmach "told my mom that he's gonna kill us if [she] calls the police." After Castro asked for more information about that, A.P. said that one night when Parmach was "mad," she "was looking downstairs" and heard him say to F.P., "I'm gonna kill you all if [you] tell the police."

3

H.P. was six years old at the time of the interview. H.P. reported that she saw Parmach punch F.P. in the face so that "[h]er eyes got dark and purple" and cut her with a knife. H.P. described another incident in which Parmach cut F.P.'s hand with a knife. H.P. told Castro that "if my mom call[s] the police, my dad will kill my mom."

Brown interviewed F.P. on July 18, 2023. Mojdeh Farid participated in the interview as a translator. F.P. reported several incidents during which Parmach committed acts of physical violence against her or her children and showed him photographs of related injuries. F.P. appeared "afraid" and "reluctant" to report the incidents and told Brown "a couple of times she did not want Mr. Parmach to be in trouble because of what she was telling [him]." Farid described F.P.'s demeanor during the interview as "scared" and "ashamed."

C.     *Charges and Plea*

The People charged Parmach with one count of torture (count 1; Pen. Code, § 206; undesignated section references are to this code), two counts of willful infliction of corporal injury on a spouse (counts 2 & 4; § 273.5, subd. (a)), two counts of assault with a deadly weapon (counts 3 & 5; § 245, subd. (a)(1)), one count of making a criminal threat (count 6; § 422, subd. (a)), and three counts of willful infliction of injury on a child (counts 7–9; § 273a, subd. (a)). The People alleged great bodily injury enhancements on counts 2 through 5 (§ 12022.7, subd. (e)) and on count 7 (*id.*, subd. (d)). They alleged three aggravating sentencing circumstances (Cal. Rules of Court, rule 4.421(a)(1)–(3)).

Parmach pled not guilty to all charges and denied all allegations.

4

D.    *Trial*

The case proceeded to a jury trial.  The prosecutor called F.P. as a witness.  She denied Parmach committed any of the violent acts she had reported to S.R. or to law enforcement.  F.P. testified, "This is all a misunderstanding . . . .  [M]y husband didn't do anything to me.  This was a mistranslation . . . .  Everything I said is twisted."  F.P. specifically denied reporting to law enforcement that Parmach said to her, "If you call the police, I will kill you."  F.P. testified, "Nothing like that happened. . . .  [T]hey misunderstood."  The prosecutor also called A.P. and S.P. as witnesses.  They both denied Parmach committed any of the violent acts they had reported to Castro.  A.P. testified she did not remember telling Castro she heard Parmach "say he was going to kill your family if you called the police," and responded, "No," when asked whether she "ever heard him say that."  H.P. testified she did not remember talking to Castro and responded, "No," when asked whether she had "ever seen your dad use angry words at your mom."  The prosecutor called S.R., Franco, Castro, Brown, and Farid as witnesses, and they testified about the incidents of domestic violence F.P. or the children had reported to them as summarized in part I.B., *ante*.

Parmach called himself and four of his relatives as witnesses.  Parmach denied he caused any injuries to F.P. or their children.  He also denied telling F.P. he would kill her and the children if she called the police.  The relatives testified they spent time with the Parmach family and never observed any abuse.

The jury found Parmach guilty of making a criminal threat (count 6).  It found him not guilty on all other counts.

The trial court held a bench trial on the alleged aggravating sentencing circumstances.  The court granted the People's motion to withdraw two of

them (Cal. Rules of Court, rule 4.421(a)(2), (3)) and found the remaining one true (*id.*, rule 4.421(a)(1)).

D.    *Sentencing*

At the sentencing hearing, the trial court denied Parmach's requests to reduce the criminal threat conviction from a felony to a misdemeanor (§ 17, subd. (b)) and to grant him probation (§ 1203). In support of those decisions, the court stated:

> "[T]he [c]ourt finds that this crime did involve the threat of great violence to a member of his family, his wife. . . .   I do find that his wife was particularly vulnerable. She's new to this country. She doesn't speak the language and she was not able to drive. And I also find that Mr. Parmach . . . took advantage of a position of trust in the actions of threatening [her].
>
> "The [c]ourt does find the factor in mitigation, however. Mr. Parmach has no criminal history.
>
> "The [c]ourt finds the factors in aggravation outweigh the factors in mitigation . . . .
>
> "Threatening to kill his wife and children as she reported allegations of domestic violence to law enforcement, making those threats to a woman who doesn't speak the language, is new to this country, doesn't understand the mechanisms and institutions in place for a person in her position, I think, outweigh against reducing this to a misdemeanor."

The court then sentenced Parmach to prison for the middle term of two years. (§§ 18, subd. (a), 422, subd. (a).)

II.

DISCUSSION

Parmach challenges the sufficiency of the evidence to support his conviction of making a criminal threat. He also challenges the trial court's decision to sentence him to prison for a felony rather than to grant him probation for a misdemeanor. We address each challenge in turn.

6

A.    *Sufficiency of Evidence*

Parmach argues the testimony the People presented at trial did not establish he made a threat.  He also argues the statement on which the People relied did not satisfy two of the required elements of the offense.  Parmach contends the evidentiary insufficiency requires reversal of the judgment.  We disagree.

Our review is deferential on a challenge to the sufficiency of the evidence to support a conviction.  We review the record in the light most favorable to the People to determine whether the record contains substantial evidence (i.e., evidence that is reasonable, credible, and of solid value) from which the jury reasonably could find the defendant guilty beyond a reasonable doubt.  (*People v. Hin* (2025) 17 Cal.5th 401, 451; *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 898.)  We presume in support of the conviction every fact the jury reasonably could deduce from the evidence, including logical inferences from circumstantial evidence.  (*People v. Flores* (2020) 9 Cal.5th 371, 411 (*Flores*); *People v. Pierce* (2025) 114 Cal.App.5th 508, 523 (*Pierce*).)  The conviction must be upheld unless there is no substantial evidence to support the jury's verdict under any hypothesis.  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87; *People v. Webb* (2023) 90 Cal.App.5th 660, 668.)

We first consider Parmach's argument the People did not present sufficient evidence he made a threat.  Parmach says "the only evidence supporting the criminal threat allegation" was the following testimony of S.R. about F.P.'s report of domestic violence to police:

"Q.  Okay.  Did you hear [F.P.] say that if she called the police, [Parmach] said that he would kill her?

"A.  Can you repeat that?

7

"Q. Did you hear [F.P.] say that if she ever called the police that [Parmach] would kill them.

"A. Yes.

Parmach contends "it is not clear from [S.R.'s] testimony that Parmach even made a threat." He also contends S.R.'s testimony was not an "inconsistent statement" that could constitute substantial evidence because at trial F.P. "was not asked whether Parmach threatened to kill her and the children if she went to the police," and therefore "the jury had no opportunity to compare the credibility of [her] out-of-court statement with her testimony in court." Parmach argues S.R.'s "uncorroborated" testimony was not substantial evidence that he made a criminal threat. Several flaws in this argument require us to reject it.

First, the testimony of S.R. quoted above was not the only evidence the People presented to prove that Parmach made a threat. S.R. also testified she heard F.P. report to police that Parmach "had told her I'll kill you." The People introduced Castro's recorded interviews of two of Parmach's daughters, A.P. and H.P. A.P. reported that when Parmach "was mad" she heard him say to F.P., "I'm gonna kill you all if [you] tell the police." H.P. told Castro that "if my mom call[s] the police, my dad will kill my mom."[1]

---

[1] Parmach claims "[t]he children's statements are too untrustworthy to be considered substantial evidence." He says they were very young when they heard the threats, A.P. was in bed trying to sleep when she heard the threat, H.P. confused the threat with Parmach's arrest, and both recanted at trial. But in evaluating the sufficiency of the evidence, we resolve neither credibility issues nor evidentiary conflicts. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Resolution of those matters is the exclusive province of the jury. (*People v. Oyler* (2025) 17 Cal.5th 756, 827–828.) Since the children's statements to Castro did not describe anything physically impossible or inherently improbable, the jury could rely on them to find Parmach guilty.

Parmach's statement he would kill F.P. was an " ' " 'expression of an intent to inflict evil, injury, or damage on another' " ' " and thus qualified as a criminal threat. (*People v. Toledo* (2001) 26 Cal.4th 221, 233; see *People v. Wilson* (2010) 186 Cal.App.4th 789, 805 [criminal threat is " 'expression of an intent to inflict serious evil upon another person' "]; *People v. Dias* (1997) 52 Cal.App.4th 46, 49 [defendant's statement that "if [victim] called the police, [defendant] would come back and kill him" was threat within scope of § 422].)

Second, Parmach did not object to the admissibility of S.R.'s testimony or Castro's recorded interviews of A.P. and H.P. Their statements of what Parmach said to F.P. were "made other than by a witness while testifying at [trial] and [were] offered to prove the truth of the matter stated" and therefore constituted hearsay, which is generally inadmissible. (Evid. Code, § 1200.) When admitted without objection, however, hearsay is competent evidence sufficient to sustain a finding or judgment. (*Gallagher v. Connell* (2004) 123 Cal.App.4th 1260, 1268; *People v. Wren* (1956) 140 Cal.App.2d 368, 369.) Parmach may not now argue the evidence does not fall within the exception to the hearsay rule for a witness's prior inconsistent statement (Evid. Code, § 1235) and its erroneous admission requires reversal of the judgment (*id.*, § 353, subd. (a) [no reversal of judgment for erroneous admission of evidence absent timely and specific objection, motion to exclude, or motion to strike]). "The lack of timely objection to the hearsay rendered it competent evidence and removes all power in this court to reverse." (*Frudden Enterprises, Inc. v. Agricultural Labor Relations Bd.* (1984) 153 Cal.App.3d 262, 269.)

---

(*People v. Gomez* (2018) 6 Cal.5th 243, 280; *People v. Gaines* (2023) 93 Cal.App.5th 91, 138–139 (*Gaines*).)

9

Third, even if Parmach could now make the argument that the hearsay exception did not apply, we would reject it.  A statement inconsistent with a witness's trial testimony is not inadmissible under the hearsay rule if the witness had an opportunity to explain or to deny the statement while testifying.  (Evid. Code, §§ 770, subd. (a), 1235; *People v. Chhoun* (2021) 11 Cal.5th 1, 44.)  When F.P. testified at trial, she denied telling police that Parmach said he would kill her if she called the police.  A.P. testified at trial that she did not remember telling Castro that she heard Parmach "say he was going to kill your family if you called the police" and that she never heard him say that.  H.P. testified at trial that she never observed Parmach "use angry words at [F.P.]" and did not remember talking to Castro.  F.P.'s trial testimony contradicted what S.R. earlier heard F.P. tell police, and the testimony of A.P. and H.P. contradicted their earlier statements to Castro. The prior statements were thus admissible to prove their substance, i.e., that Parmach threatened to kill F.P. if she called the police, and the statements constituted substantial evidence he made the threat.  (*People v. Barrett* (2025) 17 Cal.5th 897, 973; *People v. Guerra* (2006) 37 Cal.4th 1067, 1144; *Gaines, supra*, 93 Cal.App.5th at p. 138.)

Next, Parmach argues the People did not prove his alleged threat to kill F.P. if she called the police was, "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat."  (§ 422, subd. (a).)  Parmach says there is "no ability to judge whether [this] element was proved" because "[n]o testimony was introduced to show the circumstances of the threat including the time, place and what happened before and after the statement." We are not persuaded.

Whether a threat is of the type that section 422 proscribes depends largely on context. (*People v. Bolin* (1998) 18 Cal.4th 297, 338–340; *People v. Choi* (2021) 59 Cal.App.5th 753, 761–762.) Relevant circumstances include the defendant's affect in uttering the threat (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1013) and past violence by the defendant against the victim (*People v. Gaut* (2002) 95 Cal.App.4th 1425, 1432). A.P. told Castro that Parmach was at home at night and "was mad" when he threatened to kill F.P. if she called the police. F.P. told S.R. that Parmach cut F.P.'s forearm with a broken plate and that she was "scared" to seek medical attention because Parmach said "he would hurt her" if she did. F.P. also told S.R. that Parmach had wounded her with a knife, and F.P. lifted her shirt to reveal a scar from one of the wounds and shared photographs of another. A.P. and H.P. reported other incidents in which Parmach violently injured F.P.[2] Under the circumstances disclosed at trial, his threat to kill her if she called the police was "so unequivocal, unconditional, immediate, and specific as to convey to [her], a gravity of purpose and an immediate prospect of execution." (§ 422, subd. (a); cf. *People v. Hester* (2020) 58 Cal.App.5th 630, 633, 635 [angrily saying, " 'I'll kill you,' " was criminal threat]; *People v.*

2    The jury's acquittal of Parmach on the charges alleging physical injuries to F.P. does not preclude our consideration of evidence of those injuries in determining the sufficiency of the evidence to support the criminal threat conviction on count 6. "An acquittal of one or more counts shall not be deemed an acquittal of any other count." (§ 954.) "As a general rule, inherently inconsistent verdicts are allowed to stand." (*People v. Avila* (2006) 38 Cal.4th 491, 600.) Our review of the sufficiency of the evidence to support the guilty verdict on count 6 "should be independent of the jury's determination that evidence on another count was insufficient." (*United States v. Powell* (1984) 469 U.S. 57, 67.) "Thus, in determining whether substantial evidence supports the finding of guilt for count [6], we give no effect to the jury's verdict[s] on [other counts]." (*People v. Brugman* (2021) 62 Cal.App.5th 608, 632 (*Brugman*).)

*Hamlin* (2009) 170 Cal.App.4th 1412, 1433–1434 [husband's statement to wife, " 'I'll kill you now if you' " do not answer certain questions, was criminal threat]; *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1215, 1221 [angrily saying, " 'I'll get you,' " in close proximity "can be very intimidating and can carry an aura of serious danger"].)

In his last argument against the sufficiency of the evidence to support the criminal threat conviction, Parmach contends the People did not prove F.P. was "in sustained fear for [her] own safety or for [her] immediate family's safety." (§ 422, subd. (a).) Parmach says "[t]he alleged threat did not deter her from reporting her claims of domestic violence to the police," and she delayed the report not because he threatened her but because "she wanted to give [him] another chance." He asserts that F.P. "was free to contact [S.R.]" and to learn how to drive and that he "did not control his wife." "F.P. felt afraid," says Parmach, because she was "depress[ed]" and "overwhelmed" by the challenge of raising a large family in a new country with an unfamiliar culture, "and blaming her husband for abuse . . . was more likely to bring her sympathy than complaining about her hard life." This argument is unconvincing.

The main flaw in the argument is that Parmach construes the evidence in the light most favorable to him. When evaluating the sufficiency of the evidence to support a conviction, we must view the evidence in the light most favorable to the People and accept all inferences the jury reasonably might have drawn from the evidence. (*Flores, supra*, 9 Cal.5th at p. 411; *Pierce, supra*, 114 Cal.App.5th at p. 523.) The People presented substantial evidence that Parmach's threat to kill F.P. if she called the police caused her "to be in sustained fear." (§ 422, subd. (a).) S.R. testified that when she met F.P. for the driving lesson on June 21, 2023, F.P said she was "scared" to see a doctor

12

for the cuts Parmach had inflicted on her forearm because Parmach said "he would hurt her" if she did. F.P. was also "very scared to call the police." She delayed doing so until June 30, 2023, when Parmach was out of town. F.P. testified she was "scared" when she talked to Franco, and S.R. heard F.P. tell him that Parmach had threatened to kill her if she called the police. Brown and Farid testified that F.P. still seemed "afraid" and "scared" during the July 18, 2023 interview. From this testimony, the jury reasonably could have found F.P. remained fearful for nearly a month. That amount of time "extends beyond what is momentary, fleeting or transitory" (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156) and satisfies the "sustained fear" element of making a criminal threat. (§ 422, subd. (a); *Brugman, supra*, 62 Cal.App.5th at pp. 634–635 [fear that lasted about a month was "sustained"]; *Allen*, at p. 1156 [15 minutes of fear of armed defendant who threatened to kill victim and her daughter was "more than sufficient" to satisfy § 422].)

B.     *Sentencing Errors*

Parmach claims the trial court erred by imposing a felony prison term on his criminal threat conviction instead of treating the conviction as a misdemeanor and granting him probation. He faults the court for focusing exclusively on F.P.'s vulnerability and the great violence he threatened to inflict on her. Parmach complains the court failed to consider the stress that led F.P. falsely to blame him for her injuries and, in turn, provoked him to threaten her life. He asks us to vacate the sentence and to remand the matter for resentencing.

Before we address the merits of this claim of error, we dispose of the People's contention that Parmach forfeited the claim. The People argue he may not challenge the court's decision to sentence him to prison for the

13

middle term because he neither objected to that decision nor claimed any of the sentencing factors the court relied on were improper or unsupported. The People rely on the rule that "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) That rule does not apply to Parmach's claim of error. He is not complaining in this court for the first time about the trial court's selection of the middle prison term rather than the lower term or the adequacy of its statement of reasons for that selection. Rather, Parmach is arguing, as he did in the trial court, that the court should have reduced his conviction from a felony to a misdemeanor and granted him probation. He adequately informed the People and the court of his position and thereby preserved it for appeal. (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1030–1031; *People v. Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216, 1223–1224.)

We now turn to the merits of Parmach's claim of sentencing errors. His conviction of making a criminal threat was punishable as either a felony or a misdemeanor at the discretion of the trial court. (§§ 17, subds. (a), (b), 422, subd. (a); *People v. Queen* (2006) 141 Cal.App.4th 838, 842.) The court also had discretion to grant or to deny probation. (§ 1203, subd. (b)(3); *People v. Bolton* (1979) 23 Cal.3d 208, 216.) We will not disturb the court's discretionary sentencing decisions unless Parmach clearly shows they were arbitrary, capricious, or irrational. (*People v. Superior Court (Alvarez)* (1996) 14 Cal.4th 968, 977–978 (*Alvarez*); *People v. Kingston* (2019) 41 Cal.App.5th 272, 278 (*Kingston*).) He has not made that showing as to either decision.

Factors relevant to the decision whether to treat the criminal threat conviction as a felony or as a misdemeanor include the nature and

circumstances of the offense, Parmach's appreciation of and attitude toward the offense, his traits of character as evidenced by his behavior and demeanor at trial, and general sentencing objectives such as those listed in rule 4.410 of the California Rules of Court. (*Alvarez, supra*, 14 Cal.4th at p. 978; *People v. Dryden* (2021) 60 Cal.App.5th 1007, 1027–1028.) The parties discussed the nature and circumstances of the offense, Parmach's characteristics, and sentencing objectives in their sentencing memoranda. The trial court presided over Parmach's trial and stated that in preparation for the sentencing hearing it had reviewed the parties' memoranda and its notes from the trial. The court found that although Parmach had no criminal history, he should be sentenced as a felon because the crime "involve[d] the threat of great violence to a member of his family, his wife," who "was particularly vulnerable," and in committing the crime he "took advantage of a position of trust." The record supports those findings. Parmach complains the "court gave short shrift to the mitigating factors cited in [his] sentencing brief." But in deciding whether to reduce the conviction to a misdemeanor, the court was not required "to reiterate [his] argument on the record." (*Dryden*, at p. 1029.) "The trial court stated that it had read [Parmach's] papers, and the record reflects a decision based on 'individualized consideration of the offense, the offender, and the public interest.' [Citation.] While the record here may also have supported a different conclusion, we find no error in light of the deferential standard of review." (*Ibid.*)

For similar reasons, we also find no error in the trial court's decision to deny probation. The "primary considerations" in deciding whether to grant probation are public safety, the nature of the offense, the interests of justice in punishment and rehabilitation of the defendant, the victim's loss, and the defendant's needs. (§ 1202.7.) Rule 4.414 of the California Rules of Court

prescribes more detailed criteria for the court's consideration. Parmach addressed those criteria in his sentencing memorandum, which the court said it had reviewed. The court mentioned some of the criteria at the sentencing hearing, including "[t]he nature, seriousness, and circumstances of the crime"; "[t]he vulnerability of the victim"; "[w]hether the defendant took advantage of a position of trust or confidence to commit the crime"; and "[p]rior record of criminal conduct." (Cal. Rules of Court, rule 4.414(a)(1), (3), (9), (b)(1).) Although the court did not mention other criteria Parmach relied on in his sentencing memorandum, we presume the court considered them in making its decision. (See *id.*, rule 409 [sentencing judge is deemed to have considered prescribed criteria unless record affirmatively shows otherwise].) We reject Parmach's assertion that "the court did not engage with all the facts that should have informed its decision." We conclude the trial court considered the facts relevant to the offense and the offender and did not act arbitrarily, capriciously, or irrationally in denying probation. (*Kingston, supra*, 41 Cal.App.5th at p. 278; *People v. Stuart* (2007) 156 Cal.App.4th 165, 178–179.)

## III.
## DISPOSITION

The judgment is affirmed.

IRION, Acting P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.