Filed 2/1/21  P. v. Smith CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RYAN EDWARD SMITH,<br><br>Defendant and Appellant. | B304690<br><br>(Los Angeles County Super. Ct. No. BA480336) |

APPEAL from the judgment of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Christine Dubois, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Allison V. Acosta, and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Ryan Edward Smith of one count of making a criminal threat, in violation of Penal Code[1] section 422, subdivision (a).  Smith contends that the trial court violated his Sixth Amendment right to confront the witnesses against him and abused its discretion by unreasonably limiting the scope of his cross-examination of the victim.  He also contends that his statement to the victim was protected speech rather than a true threat, and that his conviction therefore violated his First Amendment right to free speech.  We disagree and affirm.

## FACTS AND PROCEEDINGS BELOW

On the afternoon of October 9, 2018, Smith attended the preliminary hearing in his murder trial, in which he and a codefendant, Derrick Williams, were accused of killing William Taylor.  At the end of the hearing, as the bailiff was leading him away, Smith made a statement to Angel H., the victim's girlfriend.  According to Angel, Smith said, " 'Don't forget.  I know where you live.' "  Angel looked at Smith in puzzlement, and Smith repeated himself.  Angel described Smith's demeanor as "angry."

A police detective recalled hearing Smith make the statement in slightly different words.  According to the detective, Smith told Angel, " 'Don't forget, I remember where you live.  Better watch out.' "  Smith then said, " 'I know where you stay at, cuz.' "  According to the detective, Smith made the statement in a "[t]hreatening" manner, with "aggressive" body language.

---

[1] Subsequent unspecified statutory references are to the Penal Code.

The bailiff was holding his arm and appeared to be holding him back.

Angel testified that she felt "scared" by Smith's statement, and that even a year later, she did not "even want to be in [the] courtroom with him." Even if Smith could not personally harm her because he was in custody, Angel was concerned that Smith's codefendant Williams might be able to get to her. She also believed that both Smith and Williams were gang members, and she was concerned that another gang member might come after her. At the time of the trial, Angel still felt afraid when she heard noises around her home.

The trial court denied the prosecution's motion to consolidate Smith's trial on the criminal threat charge with his murder trial. A jury found Smith guilty of one count of making a criminal threat (§ 422, subd. (a)), and the court imposed the middle term sentence of two years in prison.

## DISCUSSION

### A. *Limitation on Cross-Examination of Angel*

Smith contends that the trial court deprived him of his Sixth Amendment right to confrontation by preventing him from cross-examining Angel about events that occurred the morning before Smith made his statement. In that morning's hearing, Smith caused a disruption in the courtroom, and either Angel or the mother of the murder victim made statements suggesting that Smith snitched on his codefendant, Williams. In addition, Smith contends that the trial court abused its discretion by preventing his trial attorney from continuing to cross-examine Angel about the timing of when she told police detectives that

she was afraid that Williams or other gang members might attack her.

### 1. *Legal principles*

" 'The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This federal constitutional right to confront adverse witnesses in a criminal prosecution applies to the states (*Pointer v. Texas* (1965) 380 U.S. 400 . . .) and is also guaranteed independently by the California Constitution (Cal. Const., art. I, § 15) and by statute (§ 686). The primary reason an accused is entitled to confront adverse witnesses is to permit cross-examination. [Citations.] "[T]he right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, . . . to deprive an accused of the right to cross-examine the witnesses against him is a denial of the Fourteenth Amendment's guarantee of due process of law." [Citation.]' " (*People v. Wilson* (2008) 44 Cal.4th 758, 793.)

But "[t]he federal Constitution's confrontation right is not absolute; it leaves room for trial courts to impose reasonable limits on a defense counsel's cross-examination of a witness." (*People v. Sapp* (2003) 31 Cal.4th 240, 290.) In particular, the trial court's "reliance on Evidence Code section 352 to exclude evidence of marginal impeachment value that would entail the undue consumption of time generally does not contravene a defendant's constitutional rights to confrontation and cross-examination." (*People v. Brown* (2003) 31 Cal.4th 518, 545.) "The trial court . . . has wide latitude to restrict . . . cross-examination, and such testimony is properly barred unless

4

the defendant can show the prohibited cross-examination would have produced a significantly different impression of the witness's credibility." (*People v. Brady* (2010) 50 Cal.4th 547, 560.) We review a trial court's decision to exclude evidence for abuse of discretion. (*Id.* at p. 559.)

### 2. *Incident on the morning of the preliminary hearing*

At the beginning of the trial, the prosecution made a motion in limine to prevent Smith's attorney from cross-examining Angel about an incident that happened in court on the morning of October 9, 2018, hours before Smith made his statement to Angel. The prosecutor described the incident as follows:

"[T]he detective was on the stand, discussing Mr. Smith's purported statement [to police regarding the murder investigation]. And he was getting into a portion where Mr. Smith was talking about his codefendant [Williams] driving away from the scene."

"And that's when Mr. Smith's outburst began. And backup was called, and everybody was ordered out of the courtroom. And at some point in this process—I'm not certain whether and to what extent any argument occurred in court, in Mr. Smith's presence, that he could possibly have even been aware of with six deputies on top of him."

The prosecutor stated that either Angel or the victim's mother "made a comment about—[¶] . . . [¶] . . . essentially, Mr. Smith talk[ing] about being so hard, like a hardened criminal. But he's in a police interrogation room. And they made some comments about him snitching out the codefendant."

5

"Mr. Smith's mother overheard that . . . and started yelling at them, basically trying to start a fight with them."

Smith's attorney did not dispute the prosecutor's general description, questioning only the extent to which the confrontation took place inside the courtroom or in the hallway outside.

Smith's attorney argued that he should be allowed to ask Angel about the incident in order to call into question whether she actually felt afraid of Smith, as she claimed. The trial court disagreed and excluded the subject from cross-examination.

Smith now contends that this restriction on cross-examination violated his confrontation clause rights. He notes that, to be guilty of making a criminal threat, a defendant must "cause[ ] [the victim] reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety." (§ 422, subd. (a).) He argues that the incident from the morning of October 9 was relevant to show that Angel "had taunted [Smith] and engaged with his angered mother in an argument that began in the courtroom and continued out into the hall. This would have presented to the jury a significantly different impression of [Angel's] credibility and called into question her dramatic statements and that contrary to her testimony, she had no fear of appellant, his family or his associates."

We are not persuaded. The incident involving Angel and Smith's mother occurred on the morning of October 9, hours before Smith made his statement to Angel that afternoon. The proposed cross-examination might have shown that Angel was not afraid of Smith *before* he threatened her, but that is not the relevant question in a prosecution for criminal threats. Whether or not Angel had a pre-existing fear of Smith is at best minimally

relevant to the question of whether *his statement to her* "cause[d] [her] reasonably to be in sustained fear for . . . her own safety or for . . . her immediate family's safety."  (§ 422, subd. (a).)  Because the cross-examination would not have "produced a significantly different impression of the witness's credibility" (*People v. Brady*, *supra*, 50 Cal.4th at p. 560), the trial court did not violate Smith's Sixth Amendment rights by excluding it.

Smith contends that the cross-examination also would have been relevant because it would have provided circumstantial evidence of his motive and intent in making the statement to Angel.  According to Smith, Angel and the victim's mother angered him by arguing with his mother and suggesting that Smith had snitched on his codefendant.  In Smith's view, testimony regarding the events of that morning would have shown that when he made his statement to Angel in the afternoon, he was motivated by anger, and was not thinking about whether he might practically be able to carry out a threat.  In particular, he was not thinking about his potential ability to use his fellow gang members to harm Angel.  Instead, he was "merely blowing smoke without intent that anyone would take him seriously."  If he did not act with " ' "the specific intent that the statement . . . [was] to be taken as a threat" ' " (*In re George T.* (2004) 33 Cal.4th 620, 630), then he was not guilty of making a criminal threat.

This argument fails because it ignores the gap in time between the confrontation, which occurred in the morning, and Smith's statement, which he made at the end of the afternoon session in court.  Even if we assume that Smith was motivated by anger at Angel for her comments, he had several hours to consider the full implications of his statement, including how

seriously Angel would take the threat, and whether she might believe that he would be able to harm her indirectly even as he remained in custody. It would not be reasonable to infer that he made the statement thoughtlessly. In addition, if Angel had testified about the incidents of the morning, she would almost certainly have stated that the incident began when Smith engaged in an outburst that required the courtroom to be cleared and ended with several deputies physically subduing him. Smith must have known that his impulsive behavior in court implied that he might attempt to harm Angel even inside the courtroom.

Thus, even if the trial court erred in any respect by refusing to allow Smith's attorney to question Angel about the events of the morning of October 9, the error was harmless beyond a reasonable doubt because there is no possibility that the error contributed to the verdict. (See *People v. Garcia* (2020) 46 Cal.App.5th 123, 178–179.)

### 3. *Cross-examination regarding statements to police*

Smith contends that the trial court abused its discretion by sustaining the prosecution's objection to his attorney's continued cross-examination of Angel regarding the timing of when she made certain statements to police detectives. We disagree. The trial court acted within its discretion to cut off the repetitive cross-examination.

During direct examination, Angel testified that she was afraid not only of Smith personally, but also of his codefendant Williams and members of the gang she believed they belonged to. She was aware that Williams would be released from custody relatively soon, and she continued to feel fear even in her own home.

8

On cross-examination, Smith's attorney questioned Angel about when she told police about these fears, and Angel gave contradictory answers. First, Angel acknowledged that on the day Smith made the threat, she had told a police detective that she was afraid of Smith, but had not mentioned Williams or other gang members. She claimed that she told police that she was afraid of Williams at some point after the day of the threat, but did not remember exactly when.

Smith's attorney continued to press Angel about when she told the detective of her fear of Williams, asking if it happened when Williams was sentenced. Angel replied, "No. It was when [Smith] threatened me, I told [the detective] that I was scared."

The attorney asked, "Of [Williams]?"

Angel responded, "Of both of them."

The attorney asked, "Okay. Because I just asked you if you brought up [Williams] and—"

The prosecution objected that the questioning was argumentative. The court agreed, stating that "[t]he objection is sustained and . . . she's answered the question already . . . a number of times. So move on."

Smith contends that the court abused its discretion by sustaining the objection because it prevented his attorney from calling into question Angel's credibility regarding whether her fear of Smith was reasonable and actual, both of which are required for a conviction of making a criminal threat. (See *In re George T.*, *supra*, 33 Cal.4th at p. 630.) We are not persuaded. In his prior questioning, Smith's attorney had already elicited contradictory testimony from Angel regarding when she told police about her fear of Williams and other gang members. This was enough to allow him to argue to the jury, as he did,

9

that Angel was not sincere in her claims that Smith's threat caused her to be afraid. The court acted within its discretion by barring further questioning on the ground that it was argumentative and that Angel had already answered the questions.

## B.    *First Amendment Protected Speech*

Smith contends that his statement to Angel was not a true threat, and that his conviction therefore violated his First Amendment right to free speech. We disagree.

The First Amendment protects individuals against punishment by the state for their speech. (*Virginia v. Black* (2003) 538 U.S. 343, 358.) "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." (*Ibid.*)

"The protections afforded by the First Amendment, however, are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution." (*Virginia v. Black, supra,* 538 U.S. at p. 358.) In particular, the First Amendment does not protect the making of "true threats," or in other words, "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. [Citations.] The speaker need not actually intend to carry out the threat." (*Id.* at pp. 359–360.) " ' "When a reasonable person would foresee that the context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection." ' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 804.)

We "make an independent examination of the record in a section 422 case when a defendant raises a plausible First Amendment defense to ensure that a speaker's free speech rights have not been infringed by a trier of fact's determination that the communication at issue constitutes a criminal threat." (*In re George T.*, *supra*, 33 Cal.4th at p. 632.)  This "is not the equivalent of de novo review." (*Id.* at p. 634.)  Instead, we defer to the finder of fact on matters of credibility, while " ' " 'mak[ing] an independent examination of the whole record' " ' [citation], including a review of the constitutionally relevant facts ' "de novo, independently of any previous determinations by the [finder of fact]" ' [citations] to determine whether [defendant's statement] was a criminal threat entitled to no First Amendment protection." (*Ibid.*)

We have independently examined the record under this standard and determined that Smith's statement to Angel was indeed a true threat, and was therefore not entitled to First Amendment protection.  Smith claims that his statement was "at most . . . a remonstrance concerning her behavior, . . . not a true threat."  He notes that his "words make no mention of violence or an intention to physically hurt or kill [Angel].  These are words commonly spoken to children by parents to impart a suggestion that someone is skating close to the line of acceptable behavior."  But as Smith acknowledges, we do not view his words in isolation.  Instead, "it is the circumstances under which the threat is made that give meaning to the actual words used.  Even an ambiguous statement may be a basis for a violation of section 422." (*People v. Butler* (2000) 85 Cal.App.4th 745, 753.)

Smith argues that the circumstances indicate that he did not intend for Angel to believe that he meant to inflict great

11

bodily injury or death on her.  He notes that he was incarcerated at the time and unable to harm her, and that there is no evidence that he actually attempted to carry out his threat in the year after making it.  But even if a defendant's actions after making a statement may serve as evidence of his intent in making the statement, "section 422 does not require an intent to actually carry out the threatened crime."  (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1220.)  Moreover, Smith likely knew that Angel believed he was in a gang, and that he might be able to harm her even as he remained incarcerated.

In this case, the context of Smith's statement makes his meaning clear.  Smith is not Angel's father, giving her a "remonstrance concerning her behavior."  He was charged with the murder of Angel's boyfriend, and he appeared angry and aggressive while making the statement, attempting to pull away from the bailiff who was leading him back into custody.  As Angel testified when asked about the meaning of Smith's statement during cross-examination, "[W]hy would he say that?  What, he's gonna come to my house and deliver me gifts or something?  Write me an apology letter?"  The law does not require us to be naive about Smith's intention.

## DISPOSITION

The judgment of the trial court is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


BENDIX, J.