Filed 2/13/24  P. v. Headen CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRIAN CHRISTOPHER HEADEN,<br><br>        Defendant and Appellant. | A166724<br><br>(San Mateo County Super. Ct. No. 21NF005707A) |

A jury convicted Brian Christopher Headen of, among other things, making criminal threats to Jane Doe. (Pen. Code, § 422, subd. (a); undesignated statutory references are to this code.)  The trial court sentenced him to two years in prison on that count.  On appeal, he contends insufficient evidence supported his conviction.  We affirm.

### BACKGROUND

Headen and Doe were in a two-year relationship during which he frequently committed acts of domestic violence — at least twice per month and getting more serious over time.  Once, he burned her on her chest with a cigarette, scarring her; he thereafter sprayed her with mace she kept on her key chain.  Another time, he slapped her, and she suffered a black eye.  On a third occasion, he hit her twice after she deleted a woman's message from his phone.  He also repeatedly threatened her and her family.  He told her "he

1

knew where to find" her and her children "if [she] ever left," and he watches "48 Hours" — a true crime television program — so "he knows how to kill [her] and get away with it." He also threatened to "beat [her] father's ass," who was 73 years old at the time. Because of these threats, Doe's children went to live with her uncle and ex-partner. She did not report the abuse to the police because she "thought he would really try to kill [her] or do something to [her] kids." He had a volatile and explosive temper, particularly after drinking alcohol, and he always kept a knife in his pocket.

On May 9, 2021 — the day the conduct underlying the count occurred — Headen repeatedly called Doe while she was at her grandmother's house. When she didn't answer, he texted her, "bitch, whore, you are not answering your f'ing phone, you are going to see what I'm going to do to you." She took his message as a threat "[b]ecause he always threatened . . . and put his hands on [her]," and she was worried he'd "cause injury to [her]." She also feared for her family's safety. She called him "right away, because [she] knew he was upset." He answered, hung up on her, and then called her back; he repeated this "harassing" pattern — hanging up and calling back — multiple times. Ultimately, he demanded she give him $500 and said he would "do something to [her]" and take her and her children's belongings if she refused. She interpreted this as a threat to "harm" her and worried she might die. She called the police; while she was on the phone with them, he called several more times.

Headen subsequently drove to the home of Doe's grandmother. He called Doe, told her he was there, and demanded she come outside. She was scared to do so, worried he would kill her. When she didn't go outside, he drove off, only to return minutes later on foot. Doe — on the phone with the police — opened the curtains and saw him standing outside. When she

2

motioned to the phone, he "smiled and said, 'I got you,' and turned around." His comment scared her; she worried, because of his past conduct, she "might suffer significant harm to [her] body or death." He unsuccessfully tried to enter the locked front door and then walked to her son's car, made a motion to its tires, and she heard a "big noise."[1] Doe's son ran outside, and Headen fled, kicking Doe's dog as he ran away. Doe's son gave chase until Doe's mother told him to stop because she was afraid Headen would hurt him.

Police responded to the scene. Doe told them in what direction Headen had gone, and an officer drove in pursuit. The officer located a car matching Doe's description; the car fled, travelling 60 miles per hour in a residential area with a 25-miles-per-hour speed limit. After the car drove into a busy shopping center parking lot, the officer ended pursuit because she was concerned about public safety, and she lost sight of the car. A short time later, another officer found the abandoned vehicle — the police soon located Headen on the roof of a nearby liquor store and arrested him. The police found a box cutter knife in his pocket.

A jury convicted Headen of various counts, including making criminal threats. He admitted prior conviction allegations and was sentenced to a total of nine years in prison. Two years of the sentence was for his criminal threats conviction.

## DISCUSSION

Headen contends there was insufficient evidence to support his criminal threats conviction. Specifically, he argues there was no substantial

---

[1] Doe later realized Headen had slashed the tires on cars belonging not only to her son, but also her mother, uncle, and grandmother's neighbor. And when she returned to her home, she found her property and that of her children was missing.

evidence that he willfully and intentionally made a threat to commit a crime resulting in Doe's death or great bodily injury. We disagree.

We evaluate a claim of insufficient evidence for substantial evidence. (*People v. Maciel* (2013) 57 Cal.4th 482, 514–515.) In doing so, we "review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Reversal . . . is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*Ibid.*)

To obtain a conviction for criminal threats, the prosecution must establish: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . '[was] so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228; § 422, subd. (a).)

Headen contends there was insufficient evidence that he "willfully and intentionally made a threat to commit a crime resulting in death or great

4

bodily injury to Doe."[2] (Italics omitted.) He argues his statements — "I got you" and that he "would do something to" Doe — did not constitute an "actual (or implied) threat to kill or inflict injury"; those words were too vague to convey such a threat. Moreover, he argues there was no substantial evidence he "intended to convey" a threat to kill or cause injury. Finally, he insists the circumstances surrounding the utterance of these words — including the parties' history and his prior acts of domestic violence — do not change the analysis. We disagree.

Words alone may suffice to establish the existence of a criminal threat, but a "communication that is ambiguous on its face may nonetheless be found to be a criminal threat if the surrounding circumstances clarify the communication's meaning." (*In re George T.* (2004) 33 Cal.4th 620, 635; *People v. Butler* (2000) 85 Cal.App.4th 745, 753–754 ["parties' history can also be considered as one of the relevant circumstances"].) *People v. Martinez* (1997) 53 Cal.App.4th 1212 illustrates this principle. There, the defendant stated, " 'I'm going to get you,' " " 'I'll get back to you, I'll get you.' " (*Id.* at p. 1215.) In affirming the conviction, the court reasoned the potentially ambiguous words — when understood in light of "all of the surrounding circumstances," including the parties' relationship and the defendant's previous conduct — sufficiently conveyed a threat of great bodily injury or death. (*Id.* at p. 1218.)

We reach the same conclusion here. Even assuming Headen's words — "I got you" and that he "would do something to" Doe — did not, on their own, sufficiently convey a willful and intentional threat to commit a crime resulting in Doe's great bodily injury or death, we have no difficulty finding

_____

[2] Headen only addresses the first two elements of section 422; we do the same.

substantial evidence to support his conviction given the circumstances surrounding the utterance of these words.

Headen and Doe dated for two years, during which he repeatedly committed acts of domestic violence against her, approximately twice per month and increasing in severity over time. In addition to his physical abuse, he told her he knew "how to kill [her] and get away with it" and that he was going to assault her 73-year-old father. On the date at issue here, he repeatedly called her and, when she didn't answer, sent an angry text message in which he wrote she was "going to see what [he was] going to do to [her]." The message caused her fear for herself and her family. He later demanded she give him $500 and said he would "do something to [her]" if she refused. Ultimately, he drove to her grandmother's house, called Doe, and demanded she come outside. She feared he would kill her if she went outside. She knew he had an explosive and volatile temper and always kept a knife in his pocket. While on the phone with the police, she opened the curtains and saw him standing there; when she gestured to the phone, he "smiled and said, 'I got you,' and turned around." His comment scared her, and she thought she might "suffer significant harm to [her] body or death."

We review the record in the light most favorable to the judgment. (*People v. Bolin*, *supra*, 18 Cal.4th at p. 331.) There was ample evidence of Headen's ongoing and escalating acts of domestic violence and threats to Doe and her family. On the day at issue here, there was evidence of his anger over Doe's insufficient responsiveness and his demand that she give him $500 lest he "do something to" her. He drove to her grandmother's home, in possession of a knife, and demanded Doe come outside. When she didn't, he stood outside the window and — when she opened the curtains — he "smiled and said, 'I got you.'" Given the circumstances surrounding these utterances,

6

we conclude there was substantial evidence from which a reasonable jury could conclude beyond a reasonable doubt that Headen willfully and intentionally conveyed a threat to commit a crime resulting in Doe's great bodily injury or death.  (*In re George T.*, *supra*, 33 Cal.4th at p. 635.)

## DISPOSITION

The judgment is affirmed.

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
PETROU, J.


A166724