Filed 4/2/24  P. v. Eaves CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL ALLEN EAVES,<br><br>    Defendant and Appellant. | 2d Crim. No. B324674<br>(Super. Ct. No. 2022011755)<br>(Ventura County) |

Michael Allen Eaves appeals from the judgment after a jury convicted him of stalking (Pen. Code,[1] § 646.9, subd. (a)) and making criminal threats (§ 422).  The trial court sentenced him to the middle term of two years on each conviction, staying the sentence on the latter pursuant to section 654.  Eaves contends: (1) there is insufficient evidence to support his convictions, (2) his criminal threats conviction must be vacated due to instructional error, and (3) the matter must be remanded for resentencing

---

[1] Statutory references are to the Penal Code.

because the court did not consider mitigating circumstances when it imposed middle-term sentences.  We affirm.

<h1 style="text-align:center">FACTUAL AND PROCEDURAL HISTORY</h1>

John Raitt and his family have lived next door to Eaves since 2014.  Initially, the Raitts did not have issues with Eaves.  But in 2021, Eaves began to spray a horse path in front of the Raitt home, causing a safety hazard.  Raitt reported the matter to the homeowners association (HOA), and later confronted Eaves directly.  Eaves said that he could "do whatever the fuck [he] want[ed]."  Raitt explained that Eaves was damaging his property and that the HOA might blame him for the damage.  Eaves said, "Fuck the HOA.  They can go fuck themselves."

On another occasion, Eaves leaned over a fence and yelled, "I'm going to knock on your fucking door and I'm going to fucking kill everyone in the house."  Raitt hoped Eaves was yelling at someone on the telephone, and worried for his family's safety.

In July, Raitt walked out to his car so he could pick up his son from a music lesson.  As Raitt walked toward the car, Eaves yelled, "I'm going to fuck you in your fucking ass until you die, motherfucker."  Raitt asked if Eaves was talking to him.  Eaves replied, "Yeah motherfucker, I'm talking to you.  I'm going to fuck you in your fucking ass until you fucking die."  Raitt asked Eaves if he had a problem.  Eaves said, "Yeah, you motherfucker.  You're my fucking problem.  I'm going to fuck you in your ass until you die."  Raitt got in his car and drove away.

After this threat Raitt feared for the safety of his family members, who were already scared of Eaves due to his prior actions.  Raitt's fear thereafter became "all consuming"; he believed Eaves could attack him at any moment.  Raitt reported

2

the incident to the police and began to avoid Eaves, trying to deal with him only through the HOA or law enforcement.

After the July incident, Eaves escalated his threatening behavior toward Raitt. He sped his truck on the path in front of Raitt's home, despite its frequent use by Raitt and his family. Eaves frequently called Raitt a "fat queer fuck" and threatened to "fuck [Raitt] in the ass until [he] die[d]." He threw knives and hatchets at a shipping container in his yard.

Raitt installed security cameras in August 2021 so he could record Eaves's threats. A series of September videos showed Eaves "flipp[ing] [Raitt] off" and "grabb[ing] his junk." He threatened to "kick [Raitt's] ass" and "beat [his] fucking ass." Eaves said he would "cut [Raitt's] neck off" and would "take [Raitt's] phone and shove it up [his] fuckin' ass." He also threw things at Raitt and his car. Raitt called police to report the incident.

In another video Eaves called Raitt a "walking dead man." In another he said that "[e]very fucking one of you is going to die" and that Raitt was "a dead motherfucker." He threatened to put a pole "through [his] forehead" and something "up [his] ass" and to cut a hole in Raitt's door. He hit golf balls into Raitt's yard and told him to leave town. Raitt and his family had trouble sleeping amidst these threats, and discussed whether they should move.

Eaves's threatening behaviors continued into 2022. He said to Raitt: "I'm gonna to kill you, motherfucker. I'll fuckin' kill you. You little bitch, fuck." He threatened to "fucking put a bullet" in Raitt and said that his family's names would be in the news when he killed them. He also threatened them with arson.

At trial, Eaves testified that he suffered from posttraumatic stress disorder because he had been a witness in a murder trial. His family's lives were threatened, and they had to be relocated. As a result, Eaves was in "a very emotional state" when interacting with Raitt. He lacked the "proper tools to put that together right away without someone else's help."

Eaves said that a "majority" of Raitt's videos showed him "trying to work through [his] own problems." He was unaware anyone was listening to him. He felt that his "whole life was breaking down" after his children stopped talking to him.

Eaves said he was not directing his insults and threatening language at Raitt. He admitted that he had gone onto Raitt's property with his hose on one occasion, but denied that he ever engaged in his loud verbal "self-therapy" while there. He also admitted that he threw axes and knives on his own property. He did this as a form of anger management, and not to intimidate the Raitts.

DISCUSSION

*Sufficiency of the evidence*

Eaves contends there was insufficient evidence to support either of his convictions. Our review is limited to determining whether substantial evidence—"evidence that is reasonable, credible, and of solid value"—supports the judgment. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We view the evidence "in the light most favorable to the prosecution[,] and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Ibid.*) " 'Conflicts and even testimony that is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the . . . jury to determine the credibility of a witness and the

4

truth or falsity of the facts upon which a determination depends.' " (*Ibid.*, alterations omitted.) Reversal " 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict[s]." (*Ibid.*)

### 1. Stalking

Eaves argues his stalking conviction must be vacated because prosecutors presented insufficient evidence that he was subjectively aware that the statements he made to Raitt were of a threatening nature. He bases his argument on the Supreme Court's recent rejection of Colorado's stalking statute. (See *Counterman v. Colorado* (2023) 600 U.S. 66.) In that case, the defendant "was prosecuted in accordance with an objective standard." (*Id.* at p. 82.) Prosecutors "had to show only that a reasonable person would understand [the defendant's] statements as threats"; they were not required to demonstrate "any awareness on his part that the statements could be understood that way." (*Ibid.*) That lack of a subjective element violated the First Amendment. (*Counterman*, at p. 82.)

But California's stalking statute is different. Under California law, "[a]ny person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat *with the intent to place that person in reasonable fear for [their] safety[] or the safety of [their] immediate family* is guilty of the crime of stalking." (§ 646.9, subd. (a), italics added.) Thus, for a threat to be credible there must be evidence that the defendant harbored "the intent to place the person that is the target of the threat in reasonable fear for [their] safety or the safety of [their] family." (*Id.*, subd. (g).)

5

As this definition makes clear, California's stalking statute includes the subjective element that was missing in *Counterman*, *supra*, 600 U.S. 66: For his threat to be credible Eaves had to not only understand that his statements to Raitt could be understood as threatening; he had to intend that they place Raitt in fear. (*People v. Lopez* (2015) 240 Cal.App.4th 436, 453-454.) The trial court told the jury as much when it instructed them pursuant to CALCRIM No. 1301. And jurors found sufficient evidence of this subjective element. Eaves's stalking conviction thus does not violate the First Amendment.

### 2. *Criminal threats*

"[N]ot all threats are criminal." (*In re George T.* (2004) 33 Cal.4th 620, 630.) Rather, a criminal threats conviction under section 422 requires proof that: (1) "the defendant 'willfully threatened to commit a crime [that] will result in death or great bodily injury to another person' "; (2) "the defendant made the threat 'with the specific intent that the statement [was] to be taken as a threat, even if there [was] no intent of actually carrying it out' "; (3) the threat was, " 'on its face and under the circumstances in which it was made, so unequivocal, unconditional, immediate, and specific as to convey to the person threatened[] a gravity of purpose and an immediate prospect of execution of the threat' "; (4) "the threat actually caused the person threatened 'to be in sustained fear for [their] own safety or for [their] immediate family's safety' "; and (5) "the threatened person's fear was 'reasonable' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228, alterations omitted.) Eaves argues there was insufficient evidence of the last three of these elements.

6

Eaves is incorrect. As to the third element, " 'the determination [of] whether a defendant intended [for their] words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate[,] and specific [that] they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat[,] can be based on all the surrounding circumstances and not just on the words alone.' " (*People v. Gaut* (2002) 95 Cal.App.4th 1425, 1431.) " 'The parties' history can also be considered as one of the relevant circumstances.' " (*Ibid.*)

Here, Eaves's criminal threats conviction was based on the threats he made to Raitt in September 2021: He threatened to "beat [Raitt's] fucking ass," "cut [Raitt's] neck off," and "take [Raitt's] phone and shove it up [his] fuckin' ass." He made crude gestures at Raitt and threw rocks at him around the time he made these threats. And he previously made similar threats against Raitt, including that he would "fucking kill everyone in Raitt's house," and had been seen throwing knives and axes in his yard. Given these circumstances and this history, and that Eaves and Raitt were next-door neighbors, a reasonable jury could conclude that Eaves's threats carried an immediate prospect of execution and violence.

There was also sufficient evidence that Raitt was in sustained fear. A person's fear is "sustained" if it "extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) "The victim's knowledge of defendant's prior conduct is relevant in establishing that [they were] in a state of sustained fear." (*Ibid.*) So are the circumstances surrounding the defendant's threats and their

7

subsequent actions.  (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1221.)

Raitt began to worry for his family's safety in the months leading up to Eaves's September 2021 threats.  By that time Eaves had made clear that his problem was with Raitt.  That led Raitt to install a security system and to strive to avoid dealing directly with Eaves.  After the September incident Raitt called police.  He thereafter had difficulty sleeping and discussed with his family whether they should move.  Such circumstances support the jury's finding that Raitt's fear was more than momentary, fleeting, or transitory.

Eaves claims that even if Raitt was in sustained fear, his threats to sodomize Raitt were "too outlandish" for Raitt's fear to be deemed reasonable.  But Eaves ignores that "no specific crime must be identified for the jury" to find a victim's fear reasonable. (*People v. Butler* (2000) 85 Cal.App.4th 745, 755.)  He also ignores that he additionally threatened to assault and kill Raitt.  Given such circumstances and that Eaves lived next door, the jury could easily conclude that Raitt's fear was reasonable.  Eaves's second sufficiency-of-the-evidence challenge accordingly fails.

*Instructional error*

Eaves next contends his criminal threats conviction must be vacated because the trial court did not instruct the jury on attempted criminal threats.  We review this contention de novo (*People v. Wilson* (2021) 11 Cal.5th 259, 295 (*Wilson*)), and reject it.

" ' " ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence." [Citations.]  That obligation . . . include[s] giving instructions on

8

lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present, but not when there is no evidence that the offense was less than that charged.' " ' " (*Wilson*, *supra*, 11 Cal.5th at p. 295, alterations omitted.)  A court thus " 'errs if it fails to instruct, sua sponte, on all theories of a lesser included offense [that] finds substantial support in the evidence.' " (*Ibid.*)  "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*People v. Breverman* (1998) 19 Cal.4th 142, 177, disapproved on another ground by *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.)

Considering the evidence in the light most favorable to Eaves (see *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137), we conclude the trial court had no obligation to instruct the jury on attempted criminal threats.  Attempted criminal threats is a lesser included offense of criminal threats. (*People v. Chandler* (2014) 60 Cal.4th 508, 514.)  "The crime . . . encompasses situations where a defendant intends to commit a criminal threat 'but is thwarted from completing the crime by some fortuity or unanticipated event.' " (*Id.* at p. 515.)  For example, the defendant's threat may not convey an immediate prospect of execution. (*Ibid.*)  Or it may not cause the recipient to be in sustained fear. (*Ibid.*)

There was insufficient evidence that any of those scenarios occurred here.  Eaves's threats of violence to his next-door neighbor Raitt had an immediate prospect of execution: He made them after months of harassing Raitt, around the time he was throwing things at Raitt and his car, and after Raitt had observed him throwing knives and axes in his yard.  Raitt was in sustained fear: He called police shortly after Eaves threatened

9

him, couldn't sleep in the months that followed, and discussed moving with his family. That fear was reasonable: Eaves had threatened him with sodomy, assault, death, and arson—threats that came on the heels of months of similar threats.

In our view, the evidence indicates that Eaves committed criminal threats. Instructing the jury on attempted criminal threats was thus not required. (*Wilson*, *supra*, 11 Cal.5th at p. 295; see also *People v. Kelly* (1990) 51 Cal.3d 931, 959 ["it has long been settled that the trial court need not . . . instruct the jury on the existence and definition of a lesser and included offense if the evidence was such that the defendant, if guilty at all, was guilty of the greater offense"].)

*Middle-term sentences*

Finally, Eaves contends the matter must be remanded for resentencing because the trial court abused its discretion by failing to consider mitigating circumstances. We disagree.

*1. Relevant proceedings*

At sentencing, the trial court stated it had considered the probation report, Eaves's statement in mitigation, prosecutors' sentencing recommendation, and statements from the victims, including Raitt. Prosecutors asked the court to sentence Eaves to two years eight months in prison: the middle term of two years on the stalking, plus a consecutive eight months (one-third the middle term) on the criminal threats. Eaves countered that he was presumptively entitled to low-term sentences due to his mental health issues.

The trial court found that Eaves inflicted serious emotional injury on the Raitts and exhibited no remorse for his actions. The court also found that Eaves had "flat-out lied" to the jury, "minimized" his actions, and "deflected" blame; he "did

10

everything he could do other than to accept responsibility for what he did."  The court said it had considered aggravating and mitigating circumstances and determined Eaves was not entitled to the low term because there were "sufficient factors in aggravation that would bump this up to a mid[dle-]term case."

### 2.  *Discussion*

If a defendant's psychological trauma contributed to the commission of their offense, the trial court shall impose a low-term sentence unless it "finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the low[] term would be contrary to the interests of justice."  (§ 1170, subd. (b)(6)(A).)  The court followed that requirement here.  It considered the evidence, statements from the victims, and circumstances in aggravation and mitigation and concluded that the aggravating circumstances outweighed the circumstances in mitigation such that imposition of the middle term was appropriate.  There was no abuse of discretion.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

GILBERT, P. J.                    YEGAN, J.

11

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Peter S. Westacott, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.